UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE POOT,<br><br>        Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>        Defendants. | Case No. 24-cv-03618-DMR<br><br>**ORDER SCREENING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A** |

    Plaintiff Jose Poot, who is a pretrial detainee currently incarcerated at the San Francisco County Jail ("SF Jail"), filed this civil rights complaint under 42 U.S.C. § 1983. Plaintiff's application to proceed in forma pauperis will be granted in a separate order. The court now screens Plaintiff's complaint pursuant to 28 U.S.C. § 1915A.

**I.    STANDARD OF REVIEW**

    Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b).

    Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted). Although to state

a claim a complaint "does not need detailed factual allegations . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . [f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570.

## II.  DISCUSSION

Plaintiff sues the City and County of San Francisco ("CCSF"), Sergeant Espinoza (first name unknown) in his individual and official capacity, and Does 1-25.  Comp. ¶¶ 5, 6.  Plaintiff seeks declaratory and injunctive relief, monetary damages, punitive damages, and attorneys' fees and costs.  *Id*. at 9-10.

Plaintiff alleges that on June 23, 2022, CCSF employees took Plaintiff and other pretrial detainees to the "bullpen" in preparation for transport to the courthouse and announced that they would be pat-searched.  Compl. ¶¶ 12, 13.  Sergeant Espinoza "walked directly" to Plaintiff, "pretended to pat search" him, and then "cup[ed] [Plaintiff's] penis and squeez[ed] it." *Id*. at ¶ 15. Plaintiff alleges that he "immediately pushed Sergeant Espinoza's hand away and asked him what he was doing," to which Espinoza replied, "haven't you ever been searched?"  Plaintiff responded that "he had been in jail for over six years and was never searched in the manner Sergeant Espinoza searched him." *Id*. at ¶ 16.  Plaintiff then "verbally complained that Sergeant Espinoza sexually assaulted him." *Id*. at ¶ 17.

Plaintiff alleges that after the June 23, 2022 incident, Sergeant Espinoza "began targeting and harassing" Plaintiff.  On October 6, 2022, Plaintiff was back in the bullpen prior to being transferred to court and his hair was pulled back in a ponytail.  Sergeant Espinoza told Plaintiff that he could not go to court with the hair tie and "then snatched the hair tie off" Plaintiff's head. *Id*. at ¶¶ 18-20.  Espinoza then "battered [Plaintiff] by twisting his free hand behind his back and lifting it," and in so doing, tore the tendon in Plaintiff's right hand. *Id*. at ¶ 21.  Plaintiff alleges that "Espinoza took adverse action against [Plaintiff] by tearing his tendon because of his complaint about sexual assault," and that "Espinoza's actions chilled [Plaintiff's] exercise of his

2

1   First Amendment rights and did not reasonably advance a legitimate correctional goal." *Id*. at ¶¶
2   42, 43.
3         Finally, Plaintiff alleges that he submitted grievances regarding Sergeant Espinoza's
4   alleged sexual assault and use of excessive force. *Id*. at ¶ 24.  He also submitted grievances "and
5   medical requests slips complaining that he could not move his thumb and was experiencing pain,"
6   but alleges that CCSF employees "were deliberately indifferent to his medical needs and did
7   nothing, allowing [him] to experience excruciating nerve pain for at least two months without
8   treatment."  They "finally performed an X-ray two months later," confirming a torn tendon in
9   Plaintiff's hand.  Since then, CCSF employees have administered three steroid shots into his hand
10  in the span of two years.  Plaintiff continues to "experience nerve pain and other pain in his hand
11  and must wear a brace," and his injury "has substantially limited his ability to use his hand." *Id*. at
12  ¶¶ 28-29.  He alleges that unnamed Defendants "made an intentional decision to deny [him]
13  medical care after he complained and submitted grievances regarding pain in his hand," and that
14  the denial of necessary medical care put him "at substantial risk of suffering serious harm
15  including permanent damage to his tendon and hand." *Id*. at ¶¶ 45, 46.
16        As an initial matter, Plaintiff has sued Sergeant Espinoza individually and in his official
17  capacity seeking monetary relief.  "[A]n official-capacity suit is, in all respects other than name, to
18  be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Unless
19  waived, the Eleventh Amendment bars a federal court award of damages against a state, state
20  agency, or state official sued in an official capacity. *Id.* at 169.  As there has been no waiver here,
21  Plaintiff's claim against Espinoza in his official capacity for monetary damages is dismissed, and
22  Plaintiff shall be granted leave to amend, provided he can do so in good faith.
23        Each of Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983.  To state a claim under
24  42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution
25  or laws of the United States was violated, and (2) that the alleged violation was committed by a
26  person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).  The court
27  concludes that the allegations in the complaint are sufficient to state cognizable claims under the
28  Fourteenth Amendment for unwanted sexual contact, excessive force, and deliberate indifference

to serious medical needs, and a cognizable claim for First Amendment retaliation against Sergeant Espinoza.

The final claim is for municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).  The complaint alleges CCSF is liable for Plaintiff's injuries under all three theories of *Monell* liability recognized in the Ninth Circuit: policy, custom, or practice; ratification; and failure to train.  *See* Compl. ¶¶ 51-54; *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 80203 (9th Cir. 2018).

The complaint fails to state a claim for municipal liability under a theory of policy, custom, or practice.  Plaintiff alleges "the acts of the individual defendants deprived [him] of his particular rights under the United States Constitutional and its laws and were pursuant to an expressly adopted policy or a widespread longstanding practice or custom of CCSF, and was the moving force that caused [Plaintiff's] ultimate injury."  Compl. ¶ 51.  However, the only policy, practice, or custom identified in the complaint is CCSC's regular failure to perform its obligations under PREA, which "direct[s] jail commanders to take all allegations of sexual harassment and sexual assault or abuse seriously and to thoroughly and neutrally investigate allegations."  *Id*. at ¶ 31.  According to Plaintiff, "Captain Stephen Tilton has stated that he does not believe that he can run his facility and meet these requirements," and Plaintiff alleges that Tilton's "failure to take such allegations seriously reflects the official policy or widespread and/or longstanding practice or custom of CCSF's response to such allegations."  *Id*. at ¶ 31.  These allegations are entirely conclusory.  Other than asserting Plaintiff's own circumstances, the complaint does not contain specific factual allegations supporting the existence of a policy, custom, or practice, much less how they were the "moving force" behind the alleged constitutional violation.  *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (a government entity may not be liable under Section 1983 "unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights.").  Plaintiff's complaint also fails to allege facts to support an inference that that the practices were "widespread" and so "well settled as to constitute a custom or usage."  *See City of St. Louis*, 485 U.S. at 127 (quotation omitted); *see Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995) ("Proof of random acts or isolated events is insufficient to

4

establish custom."); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").

The complaint also fails to state a municipal liability claim based on ratification. The complaint contains the following allegations supporting ratification: Captain Tilton's "failure to take all allegations seriously and to investigate allegations of sexual harassment, assault, and/or abuse ratifies perpetrators' conduct at the highest level in the facility." Compl. ¶ 31. Further, "Captain Tilton had final policymaking authority from CCSF concerning the acts of his subordinates, and he ratified their acts and/or specifically made a deliberate choice to approve their acts and the basis for it." *Id.* at ¶ 52. These allegations are conclusory, and the complaint contains no specific factual allegations to support the claim that Tilton made a deliberate choice to approve Espinoza's conduct. Moreover, the complaint fails to allege that any "authorized policymakers" knew of and approved the officers' actions "before the alleged constitutional violations ceased." *See Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). Accordingly, the *Monell* claim based on a ratification theory is dismissed with leave to amend.

Finally, the complaint fails to state a municipal liability claim based on failure to train. In order to establish section 1983 municipal liability based on a failure to train, a plaintiff must show: 1) deprivation of a constitutional right; 2) a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons with whom [the police] are likely to come into contact"; and 3) that his constitutional injury would have been avoided had the municipality properly trained the officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (quoting *Canton*, 489 U.S. at 388-89) (first alteration in original).

Plaintiff alleges that "CCSF routinely fails to adequately train its deputized staff on the requirements of PREA, despite sexual harassment and sexual assaults regularly occurring at" the SF Jail," and that "[d]eputized staff are not adequately trained on what constitutes sexual assault or harassment in violation of PREA and/or CCSF policy and only apply PREA's obligations and

1  protections, if at all, to allegations of rape by penetrative sex." Compl. ¶ 32.  He further alleges
2  that "CCSF's trainings were not adequate to prevent sexual harassment, sexual assault, and
3  retaliation, and CCSF was deliberately indifferent to the substantial risk of their failure to train its
4  employees on preventing such violations of law." *Id*. at ¶ 53.  As with the other theories of *Monell*
5  liability, these allegations are conclusory and unsupported by any facts.  The complaint contains
6  no allegations about the specific training that was deficient or how it was deficient and does not
7  allege how the training deficiencies resulted in the alleged constitutional violations at issue.

8        Accordingly, the complaint fails to state a *Monell* claim.  It is therefore dismissed.  As
9  amendment may fix the deficiencies, dismissal is with leave to amend.  If Plaintiff chooses to
10 amend the complaint, he may do so **by no later than November 18, 2024**.  If Plaintiff does not
11 file an amended complaint by that date, the court will order service of the summons and remaining
12 claims on Sergeant Espinoza, the sole remaining defendant, and set an initial case management
13 conference.  If Plaintiff files an amended complaint, the court will review any new claims under
14 28 U.S.C. § 1915A.

15 **III.  CONCLUSION**

16       For the foregoing reasons, the *Monell* claim against CCSF and Plaintiff's claims against
17 Espinoza in his official capacity are dismissed with leave to amend by no later than November 18,
18 2024.  Plaintiff shall plead his best case.

20 **IT IS SO ORDERED.**
21 Dated: October 28, 2024



Donna M. Ryu
Chief Magistrate Judge